JOHN RAFFERTY et al., Appellants, v. TOWN COUNCIL OF CLERMONT et al., Appellees.

**ELECTIONS:** Ordering, Calling and Notice—Non-Mandatory Requirements. 1 An election is not necessarily invalidated because the proposition upon which the people voted did not reach them with all the strict formalities required by law, and the state of the vote cast may be very potent to show that no prejudice resulted from lack of formality. So held with reference (a) to the signing by the mayor of a resolution ordering an election, and (b) to the recording of service of notice of a special meeting of the city council.

**CERTIORARI:** Proceeding and Determination—Return—Supplementary Testimony, Limit On. 2 Testimony in addition to the return to a writ of certiorari may be received *provided it bears on jurisdiction.* So held with reference to testimony whether a mayor signed the resolution in question.

**CERTIORARI:** Procedure and Determination—Return—Amendments. 3 Filing an amended return in the absence of opposing counsel affords no basis for complaint when counsel was promptly informed of the filing and recognized the procedure by a motion to strike.

**MUNICIPAL CORPORATIONS:** Proceedings of Council—Special Meetings—Notice. 4 Proceedings of a city council at a *special* meeting are not rendered invalid by the failure to serve one

member with notice of the meeting when such member was in favor of the proposition as finally adopted by the council, left the city with full knowledge that said meeting would be called, and at the time of the meeting was in a distant state.

*Appeal from Fayette District Court.*—A. N. HOBSON, Judge.

WEDNESDAY, SEPTEMBER 26, 1917.

THE incorporated town of Clermont asserts that it has annexed to its territory certain lands owned by plaintiffs. The plaintiffs challenge the legality of this annexation. On their petition, the district court issued a writ of certiorari to review the legality of the proceedings. Upon hearing, it annulled the writ, and plaintiffs appeal.—*Affirmed.*

*H. P. Hancock,* for appellants.

*Pickett, Swisher & Farwell,* for appellees.

SALINGER, J.—I. On the authority of

1. ELECTIONS: ordering, calling and notice: non-mandatory requirements. *Moore v. City Council of Perry,* 119 Iowa 423, and some of our later decisions in school district cases, it is settled that, unlike statute requirements which are safeguards against the loss of substantial rights of the public, statutes are not mandatory which are mere directions as to method in the formal steps preparatory to an election at which there is the right and opportunity to accept or reject what such formalities present for action. That a proposition upon which the people have the final word does not reach them in a manner which is an exact compliance with the Code loses the electors nothing of substance. Omissions to cross and dot do not, as seems to be contended, go to jurisdiction to bring on an election. The proceedings of town councils and the acts of town officers should be liberally construed, with a view to upholding the transaction of essential public business. *Union Pac. R. Co. v. McLean,*

(Neb.) 139 N. W. 679.   And see *President, etc. of Bank v. Dandridge,* 12 Wheat. (U. S.) 64; *State v. Siemens,* (Ore.) 133 Pac. 1173; *McCloud v. City,* (Ohio) 44 N. E. 95; 36 Cyc. 1157; *Erhardt v. Schroeder,* 155 U. S. 124; *French v. Edwards,* 13 Wall. (U. S.) 506; *United States v. Eaton,* 169 U. S. 331.

2. CERTIORARI: proceeding and determination: return: supplementary testimony, limit on.

One complaint is that the court erred in holding that the resolution for the election was properly and legally signed by the mayor.   Elaborating, appellant says that the notice of election and the proclamation of the result of the election were signed by the mayor, but the record of said meeting was signed by the clerk, and not by the mayor; that, while a copy of the resolution was by the mayor taken to the printer for publication and then signed by him in the office of and in the presence of said printer, this was a mere piece of paper to guide the printer in the publication of said notice, and there is no record that the signature was attached to the original resolution as recorded; that the record of the meeting does not show that the mayor ever signed said resolution "of record."   In one view, the controversy over the signing by the mayor of the initial resolution is a moot one.   The real dispute is on whether the fact that he signed it might be shown by an amendment to the return, or by parol testimony, the contention being that the latter may not be permitted because a variance of the return, and that the amendment was not authorized.   In other words, if the method of proof was proper, it *is* established that the mayor did sign.   Appellant insists that the failure to sign went to jurisdiction, and that, without such signature, there was no resolution which was effective and nothing to publish, and that publishing such unsigned resolution effected nothing.   If failure to sign does not go to jurisdiction, the failure does not, for reasons stated and presently to be stated, afford basis for

substantial complaint; for, if the signing *was* jurisdictional, then additional evidence upon what was done on a jurisdictional point was competent. *Hatch v. Board,* 170 Iowa 82, at 85. The statement that the clerk "made no record of said signature" we do not quite understand. We know of no requirement that the signature as a thing of itself shall be made of record, and it seems to us that, if the resolution be signed, that is all that even literal compliance with the statute requires on that head.

Assume, with appellant, that there was no power to act until the mayor signed, and it follows that oral testimony on whether he did or did not sign was rightly received. That being so, it becomes unnecessary to go into the further contention that, though Code Sec. 4159 permits the return to be amended if the original return is defective, here there was no defective return. The question then narrows to whether the court was justified in finding, as it did, that the resolution was signed. We think this is established by the testimony of the witness Scott; and it may be added to the statement that such testimony was competent that it was not until after it had been given that any objection thereto was made; and the vital point of the objection was that the testimony was not the best evidence, which, as we have seen, is, in any event, not well taken, since it is the appellants' own theory that it was upon a point concerning which testimony additional to the return was permitted. It may be added further that the objection was not ruled on, and that consequently we have no exception to proceed upon.

3. CERTIORARI: procedure and determination: return: amendments.

Complaint is made that the amended return, which differed from the original one only in exhibiting the signature of the mayor, was filed too late, and when counsel were not present. It is conceded that the attorneys of the plaintiff were informed of the fact of fil-

ing, and it appears of record that they filed a motion to strike the amendment. How to deal with the time at which the amendment was filed was very largely in the discretion of the trial court, and nothing appears here to justify us in interfering with it, and, at all events, in view of what has been said concerning the oral testimony, there was no prejudice in permitting this amendment to stand.

We have no quarrel with the very large number of authorities cited by appellant for the general proposition that the return is conclusive as to all matters questioned in the certiorari proceeding, and that the determination is to be made upon the return, which imports absolute verity, and do not question the soundness of the decisions in other jurisdictions that the lower court can take nothing from nor add anything to the evidence after the writ is served. But, notwithstanding these generalities and applications of it in other jurisdictions upon their own statutes, we are controlled by our own statutes and our interpretations of them, and therefore hold that there was no improper dealing with the record in this case.

*Incorporated Town of Hancock v. McCarthy,* 145 Iowa 51, relied on by appellant, is not based on want of formalities, and in fact holds that what was done did not work as matter of substance that the mayor had not approved. Whatever is said in *Moore v. City Council of Perry,* 119 Iowa 423, refers to action by which the council attempts to prevent the mayor from approving or vetoing ordinances, and holds that, where he fails to approve in such circumstances, there is no resolution which may be effectively published. *Stutsman v. McVicar,* 111 Iowa 40, holds that, where the mayor vetoes a resolution to pay a claim, he is justified in refusing to sign a warrant to pay that claim. *Altman v. City,* 111 Iowa 105, is merely that an ordinance which requires that a mayor shall sign or veto, and return resolutions passed before the same take effect, is mandatory,

the resolution being one authorizing street improvements and assessing special taxes in payment therefor. That is, in effect, the holding of *Heins v. Lincoln,* 102 Iowa 69, at 74, as applied to an ordinance selling bonds, putting the cash in the treasury, and therewith redeeming old bonds.

Though appellant contends that the fact is immaterial, we are of opinion that the vote actually cast on the annexation is worthy of great consideration upon whether any substantial wrong was done the electorate by any alleged irregularity in the steps through which they were invited to act. On the election of town officers, only 126 votes were cast, while on the election in review, 127 votes were cast for annexation, 105 being in favor thereof and 14 against. The central object of all the steps is to procure an expression upon the final issue, and where, as here, that was accomplished, we should not be hypercritical as to the steps. The alleged failure of the mayor to sign the resolution requiring an election did not induce a single voter to refrain from voting nor mislead one of them. This is inherently manifest. Moreover, the resolution which was published and which was the only one seen or to be seen by the voters did purport to be signed by the mayor. We think this complaint is not tenable, and was rightly overruled.

### 1-a.

We agree with the trial court, and indeed see no serious room to question it, that all publication required was duly made.

4. MUNICIPAL CORPORATIONS: proceedings of council: special meetings: notice.

II. We have no quarrel with the general definition of what constitutes notice. As a general proposition, whenever notice is required or authorized by statute, written notice is understood (29 Cyc. 1117, and citations under Note 33), though this court has been inclined to limit this to notice in judicial proceedings.

We do not question the general proposition that, in the absence of notice to even one member of the council, a special meeting may not legally act, even though all the other members of the council are present and concur in the action; nor are we out of accord with the reasoning for this rule, to wit, that the majority may not presuppose that the absent member might not change its views were he present, and that he may not be eliminated by taking steps to keep him away, or by deliberate failure to take steps that might insure his presence. For instance, there may not be a setting of the clock ahead to keep one member out, as, it is said in *Town of Springfield v. People's Dep. Bank,* (Ky.) 63 S. W. 271, was done in the Gold-Erie Railroad case. We concede that the privilege of attending is not that of the alderman, but that of his constituents. See *People v. Batchelor,* 22 N. Y. 128. The majority may decide, but the law demands that all confer together before deciding. *People v. Walker,* 23 *Barbour* (N. Y.) 304. The people are entitled to have the joint and collective judgment of all their representatives at the special meeting. *Shugars v. Hamilton,* (Ky.) 92 S. W. 564. While the majority may act, it is not authorized to do so without notice to all. *Wiggin v. Elders & Deacons of Baptist Church,* 8 Metcalf (Mass.) 301, 312. The attendance of a mere quorum is not sufficient, for every member has a right to be present and participate. *Beaver Creek v. Hastings,* (Mich.) 18 N. W. 250. Indeed, the statute provides that for special meetings notice shall be served personally or left at the usual place of residence of the member, and that the clerk shall make a record of such service. Code Sec. 668, Subd. 4.

It seems to be conceded that one councilman was out of the state for substantially a month—had been away something like two weeks when the resolution was adopted. There is an affidavit in the record which perhaps should not be there, but its presence is not objected to nor challenged

before us.  From it, it appears that the absentee knew before he went away that there would be a special meeting for this purpose, and that he would have favored it, had he been present.  He went away knowing this, and, at the time of the meeting on March 5th, was in Oregon, and could not have attended if he had been notified of the special meeting.

In *Mayor, etc., v. Knoxville Water Co.,* (Tenn.) 64 S. W. 1075, the first and last readings of an ordinance were had pursuant to charter on March 9th, 15th, and 30th.  The first and last of these readings were made at special meetings, calls for which were made about 12 hours before they were held.  On March 9th, one alderman was absent from the city and state, and his exact whereabouts unknown.  On March 30th he was likewise absent, and about 300 miles from Knoxville (his residence was within the city) ; and it was held that a finding that the ordinance was void because, though legally practicable, no notice of the special meetings was given the absent alderman, was erroneous, as the evidence disclosed that such notice was not legally practicable.  The case concedes the general rule to be that every member is entitled to reasonable notice of special meetings, and that no important action can be lawfully done by such meeting unless such notice has been given, or unless the members not notified actually attend and participate in the business of the meeting—citing *London & N. Y. Land Co. v. City of Jellico,* (Tenn.) 52 S. W. 995. In the *Jellico* case, it appeared that the alderman was in the building where the meeting was held, and the inference might be that he was purposely omitted from the notice, as he was hostile to the ordinance that was considered, and the meeting was at the instance of the persons interested in the passage of the ordinance.  But in the case which refers to and distinguishes the *Jellico* case, as here (*Mayor etc., v. Knoxville Water Co.*), it developed afterwards that the alderman was in favor of the ordinance, and would

have voted for it if he had been present at the meeting. So the facts are as like those in this case as it is usual to find in two cases. The main case concedes the general rule, but holds that one exception exists where giving notice is impracticable. It says:

"We are of opinion that, when a member of the council removes from the state or is continuously absent from the state, and when he is shown to have been absent from the state and beyond reach on the occasion and at the time of the call, as appears in this case, it is not legally practicable to give him notice of called meetings."

Dillon, in his work on Municipal Corporations, recognizing the above rule, says (Sec. 534):

"An order to serve all is not sufficient; all, if practicable, must be served, but if the party entitled to notice is absent from the municipality, and it is impracticable to give him notice in proper form, the service of notice is excused."

In *State v. Kirk*, 46 Conn. 395, 397, the court held that a good reason was shown why actual notice was not given. The member absent was not only gone from the state, but his whereabouts appear not to have been known until afterwards. The fact upon which lack of applicability might be urged is that a *notice* in writing was left at the store of his son, where the alderman was in the habit of visiting every day when in town. The court says that no other notice could well have been given, and the law never required impossibilities. We fail to see how the leaving of this notice at the store was better than none. It was one that could not possibly reach the one to be notified in time to bring him to the meeting. *Pike v. Rowland*, 94 Pa. 238, holds that, where notice of special meeting is necessary, it must be personally served, if practicable, upon every member entitled to be present.

We do not lose sight of the fact that the statute, Code

Sec. 668, Par. 4, provides that notice of such meetings be given to each of the members, and be personally served, or left at his usual place of residence. In this case, it does not appear whether the absentee alderman had a usual place of residence. But it would not change the essential situation if he had had. Leaving it at such place of residence would not and could not have brought him on from Oregon and to this meeting. There is but one way to hold with the appellant, and that is to declare that this statute is absolutely mandatory, and that all reason must fail in its consideration. To do this, we must disregard the weight of authority and, in effect, overrule the holdings elsewhere and in this jurisdiction that, notwithstanding the language of the statute, the notice need not be served if the member attend the meeting. We apprehend, of course, how unreasonable it would be to demand notice to one who came without it. But the unreasonableness of the requirement can either be taken into consideration whenever there is an unreasonableness presented, or else the question whether carrying out the words of the statute would work an unreasonable result must not be touched, no matter what the unreasonableness is. We think the trial court selected the better of two alternatives, and that where, as here, an alderman knew that a meeting would be had, knew what was to be done at it, approved of the proposal and would have supported it had he been present, it would be straining the statute beyond the uttermost pale of reason to hold that failing to serve him with notice of that meeting at a time when he was thousands of miles away destroys the act of a municipality supported by the overwhelming majority of its electors.

This is so of a further requirement of the statute that the service of a notice shall be recorded. If that, too, is mandatory instead of directory, the failure to record the

service would vitiate the proceedings though every member was duly served, and even if all members attended.

In our opinion, *Barclay v. School Township,* 157 Iowa 181, at 183, does not militate against these our conclusions. The vitals of that case are that no notice of a special meeting was given a director who was in fact at home, and that it was not given because the secretary was misled by erroneous information, derived from another, that the director was not at home and could not be reached personally, whereupon the secretary deposited in the mail, properly addressed to the director, a notice of the meeting, which the director in fact never received. He left home on the morning of the following day and was absent from the state until after the proposed meeting was held. It is upon this that it is decided that the fact that the secretary made what was, under the circumstances as they appeared to him, reasonable effort to give notice, and that, later, service would have been unavailing, will not meet the statute.

It is plain that, in our opinion the judgment of the court below must be—*Affirmed.*

GAYNOR, C. J., LADD and EVANS, JJ., concur.